## SUPREME COURT.

### George Adee agt. Maria Howe.

*Pension—What attorney may charge for prosecuting a claim for a pension.*

Although an attorney is prohibited by the laws of the United States from charging or taking more than ten dollars for prosecuting a claim for a pension, such prohibition does not cover services rendered for the person claiming the pension after the certificate for the same was issued.

*Delaware Circuit, March,* 1880.

This action was brought to recover for services and disbursements in procuring a pension for defendant. It was first tried before a referee and plaintiff's complaint dismissed, with costs. Plaintiff appealed to the general term where a new trial was ordered (*Adee* agt. *Howe,* 15 *Hun,* 20). It is the same case upon which plaintiff was prosecuted in the United States court, referred to in the above decision. It appeared upon the trial that plaintiff had been prosecuted upon a complaint made by S. H. H. Parsons, United States Pension Agent of Albany, and an examination had before W. Frothingham, United States Commissioner, and that Richard Crowley, United States District-Attorney, then took charge of the case. Plaintiff claimed and asserted that the proceedings being had in the United States court were unwarranted. While those proceedings were pending in the United States court the plaintiff repaid to the defendant, by and with the consent of her agent, S. H. H. Parsons, $110, being all the money he had charged or received of defendant, upon condition and with the understanding that she would resettle and pay him what he was legally entitled to charge and receive by law.

It further appeared upon the trial that the defendant's husband, Stafford Howe, enlisted in the army in the fall of 1861

and served three years, and then re-enlisted and was killed in May, 1864, in the Wilderness, Virginia; that defendant immediately employed H. F. Davidson, Esq., of Delhi, to get her a pension, and after about three years he failed therein, and she then employed Mr. Young, of Otsego county, and after about three years he also failed to procure a pension for her. The great trouble in her case was to make proof of Howe's death. Defendant then, under the advice of her brother-in-law, applied to plaintiff, in February, 1870, to get it for her. Plaintiff at first declined, stating that he was not a United States pension or claim agent, had taken no license nor oath of allegiance and could not prosecute a claim against the United States government. But she insisted and he finally consented to assist her as a lawyer, as any other person could do, she to prosecute her claim in her own name and pay him, or any person employed by him, out of money other than United States pension money. Plaintiff went to work, made divers journeys, wrote many letters and paid expenses and disbursements, before pension was granted, of forty-two dollars and fifty-five cents. J. C. Brown, at defendant's request, made several journeys and incurred an expense of twenty-five dollars, and then not succeeding therein plaintiff employed H. E. Stoutenburg, with defendant's approval, on condition that if he would procure the remaining evidence he was to have fifty dollars, but if he did not get it then he was to have no pay. He refused to trust defendant and plaintiff became personally liable for it. After much expense he procured the proof and plaintiff sent it to Washington, and February 27, 1873, a certificate for a pension was issued to defendant. But this certificate was misdirected, and plaintiff was employed to look it up and incurred further expenses of seven dollars and ninety-three cents; and Richard McAlister, of Washington, was also employed to look after it and charged therefor ten dollars. The certificate was received and delivered to defendant May 14, 1874, at which time all the claims and expenses herein were talked over between plaintiff and defendant, and

Adee agt. Howe.

defendant paid plaintiff out of money, other than United States pension money, $110, out of which he was to pay McAlister ten dollars, Brown twenty-five dollars and Stoutenburg fifty dollars, if defendant did not settle with him for a less sum before June 1, 1874. If she did plaintiff was to have what was left for his services and expenses. If she did not pay Stoutenburg then plaintiff was to pay him and be the actual looser. .

THE COURT — MURRAY, J., charged the jury as follows: Gentlemen, I have caused the plaintiff to make a statement of the items which he gave in his evidence, which will be handed you by the consent of counsel. But I will call your attention to each of them particularly so that you may understand the rules that govern each and every one of them.

The first item is ten dollars for his services as attorney previous to the time that this pension certificate was issued. You see he was employed in 1870 and performed services until the 1st of March, 1873, and also until May, 1874, and he divides that time and charges for all services that were rendered previous to the 27th day of February, 1873, when the pension certificate was issued, simply ten dollars. That is all that he could charge under the laws of the United States. He could not charge any more than that. The law prohibits him from taking more than that for prosecuting a claim for a pension.

Then the next item is a claim of $150 for services rendered from and after the 27th day of February, 1873, up to May 14, 1874. You see that was after the pension certificate was issued and after the prohibition in the statute of the United States as against any person taking more than ten dollars for services in obtaining a pension, and he claims that the services performed after the certificate was issued do not come within the prohibition of the statute — and I think that is so; that the prohibition would not cover services rendered for her after this certificate was issued; and then it is for you to say what those services were worth. He has made a charge of

$150, but you, as men of judgment and good sense and experience, are to say what they were reasonably worth. He would be entitled to recover what his services, done for her during that year and three months, were worth. He has given you an account of the services substantially that he performed; that he went to Franklin to see her on two different occasions; that he wrote to Mr. McAlister, at Washington, and received back this blank power of attorney, which he filled up and caused it to be sent to Franklin and returned to him by mail, and then he sent it to McAlister. And he paid various items of postage and kept watch of the case and looked after it, but did nothing else in particular. You are to say what that is reasonably worth. What she should reasonably pay him for those services rendered during that year and three months from and after the 27th of February, 1873, up to May 14, 1874, at the time they met and had that settlement in Franklin. You are to look at this. You have heard the evidence, and you have sufficient judgment and experience and good sense to say what would be fair as between him and her in regard to the services then performed. Of course you are aware that attorneys charge more than for ordinary service. Attorneys that have charge of business, they always charge, and they have the right to charge, more than ordinary clerical hire, and the mere price that he would have to pay for drawing the power of attorney would not be a compensation for him in keeping charge of and looking after the case. And you are to say what would be reasonable — that is all. He is simply entitled to reasonable compensation. The fact that he has made a charge and thinks those services were worth $150 is not controlling upon you; you are the ones to judge of this and to say, under all the circumstances, what she should pay to him for that year and three months' services done in that manner and in that way. Then you have the fact that he paid to Mr. Stoutenburg fifty dollars. If his evidence is true that she was to settle with Mr. Stoutenburg before the first day of June, when he expected to be here to

attend court, and that she failed to do so within that time, and he paid over to him the money without any knowledge that she had made an arrangement with Mr. Stoutenburg for a less sum; if that is the true version of the case, why then it seems to me that under the evidence in this case he would be entitled to recover the sum, because Mr. Stoutenburg says his services and expenses were worth that, and that he made up an itemized account and it amounted to fifty-two dollars, and that the agreement between him and Mr. Adee was that Mr. Adee was to be personally liable, and he was to take special pains to look up the necessary affidavits. This, you see, turns upon this fact. She testifies that there was no time fixed within which she was to pay it. And it is claimed on the part of the defendant that Mr. Adee on his return from Albany, without waiting and giving her ample opportunity to settle with Mr. Stoutenburg, went and voluntarily paid it, so as to have the benefit of it before the United States court. That is the theory on the part of the defendant. But Mr. Adee says he had to attend court here at that time and that it was understood and agreed between him and Mrs. Howe that she was to pay it before that time, and she says that it was not so. If her statement is true and Mr. Adee, unreasonable and with undue and unseemly haste, paid this fifty dollars and deprived her of the opportunity of settling it for a less sum, which she would have been enabled to do, why, then, it is for you to say whether he should recover it under those circumstances. It seems to me that if the agreement was, as she testifies, that there was no limit to her time, that she should have been given time and some notification given to her in regard to it before this fifty dollars was paid over. But it is a question for you. You are to look at it and say what you believe to be the truth in regard to it.

And then he paid J. C. Brown twenty-five dollars. There is no dispute about that. He says he agreed, in the settlement with her at Franklin, May 14, 1874, to pay it. She says there was nothing said about it. If he did not agree

Adee agt. Howe.

to pay it and went voluntarily and paid it without any knowledge or request on her part, then he cannot recover it. But if he agreed with her that he would pay it, and did pay it, in pursuance of such an agreement, he would be entitled to recover it of her. You are to say which is right in regard to that. Did he pay this in pursuance of an agreement and understanding with her that he should? Or did he voluntarily and of his own accord and without any request on her part go and pay it? If the latter was the case he cannot recover it. If the former was the case he can recover it. Then he paid McAlister ten dollars, and there seems to be no dispute about that. It would seem that he should recover that from her. He paid it by her direction and by her request, and Mr. McAlister was suggested as an agent by Dr. Foote, and in her presence, so there could be no dispute about the McAlister ten dollars. In all of these transactions Mr. Adee makes various journeys and is put to expense in regard to this matter, and he pays out his money for such expenses, before the pension was granted, forty-two dollars and fifty-three cents, and after it was granted seven dollars and ninety-three cents, making the amount fifty dollars and forty-six cents. That is the actual expense he paid out while he was in the performance of services for her and at her request and direction; that he would be entitled to recover if such money was paid out by him in the performance of her business, with her understanding and request. These are the six items which have been stated by the plaintiff for which he claims to recover, and you are to look over them carefully and say what is right in regard to them. And then you have the right, and it would be your duty, to allow him interest from and after the time they met in Franklin, which was May 14, 1874. You should compute interest on whatever amount you shall find due to him from the 14th of May, 1874, up to this time, and add that to the amount that you shall find to be due him, and that should be your verdict.

It has been mentioned that this suit has been tried before; but with that you have nothing to do whatever. You take

the evidence here; you consider and deliberate upon the case precisely as if it never had been in court before, and look upon the evidence and exercise your own judgment in regard to every question that arises in the case. The credit of a witness is always in the hands of the jury. You are the ones to say what evidence you believe to be truthful and what evidence you believe to be untruthful; and you are to give weight to the evidence that you believe to be true, and discard the evidence that you believe to be false.

Under these instructions you will take this case and render such a verdict as you believe the evidence warrants.

The jury rendered a verdict for plaintiff of "two hundred seventy-five dollars and forty-two cents." No appeal.